1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN JOSE DIVISION

7

8 | ROBERT E. ROSCIOLI,

Plaintiff,

Case No.  19-cv-03894-VKD

9

10 | v.

**ORDER RE CROSS-MOTIONS FOR
SUMMARY JUDGMENT**

11 | ANDREW M. SAUL,

Defendant.

Re: Dkt. Nos. 23, 24

12

13

14          Plaintiff Robert Roscioli appeals a final decision of the Commissioner of Social Security

15 ("Commissioner") denying his application for disability insurance benefits and supplemental

16 security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C.

17 §§ 423, 1381, *et seq.*  The administrative law judge ("ALJ") determined at step two of the

18 sequential analysis that Mr. Roscioli does not have a severe impairment or combination of

19 impairments that significantly limits his ability to perform basic work-related activities for 12

20 consecutive months.  Mr. Roscioli contends that the ALJ erred in finding that his mental

21 impairments are not severe.  Additionally, Mr. Roscioli claims that the ALJ improperly rejected

22 his testimony and that of Mr. Roscioli's girlfriend, Victoria Cardenas.

23          The parties have filed cross-motions for summary judgment.[1]  The matter was submitted

24 without oral argument.  Upon consideration of the moving and responding papers and the relevant

25

26 ─────────────────

[1] Mr. Roscioli objected to the Commissioner's cross-motion for summary judgment and requested
27 clarification from the Court to the extent that the ECF docket entry for the Commissioner's motion
indicates that the Commissioner might have intended to file a reply.  Dkt. No. 25.  No such
28 unauthorized reply was filed and briefing has closed.  Mr. Roscioli's objection and request for
clarification is deemed moot.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    evidence of record, for the reasons set forth below, the Court denies Mr. Roscioli's motion for

2    summary judgment and grants the Commissioner's cross-motion for summary judgment.[2]

3    I.     BACKGROUND

4           Mr. Roscioli was born in 1988 and has a high school education.  He previously served in

5    the military as an infantry solider, and has worked as a dishwasher, stock clerk, and salvage

6    laborer.  AR[3] 54, 235, 295.

7           On July 27, 2015, Mr. Roscioli applied for disability insurance benefits and SSI, alleging

8    that he has been disabled since July 27, 2015 due to schizophrenic-affective disorder, post-

9    traumatic stress disorder ("PTSD") and seizures.  *See, e.g.,* AR 62, 77, 90, 108, 235, 239, 294.  His

10   application was denied initially and on review.  An ALJ held a hearing and subsequently issued an

11   unfavorable decision on June 18, 2018.  AR 17-25.

12          The ALJ found that Mr. Roscioli met the Act's insured status requirements through June

13   30, 2019, his date last insured.  AR 19.  At step one of the sequential analysis, the ALJ found that

14   Mr. Roscioli has engaged in substantial gainful activity since the alleged onset date of July 27,

15   2015, noting that Mr. Roscioli's records indicate that from approximately October 2016 to

16   October 2017 his earnings exceeded the substantial gainful activity threshold.[4]  AR 20, 283-84,

17   286.  Mr. Roscioli does not dispute that finding.  Nevertheless, the parties seem to agree that there

18   remains an issue whether Mr. Roscioli was disabled during the period between July 27, 2015 and

19   October 2016, or after October 2017.  *See* Dkt. No. 24 at 3-4; Dkt. No. 26 at 2.  And the ALJ did,

20   in fact, proceed to the next step of the sequential analysis.

21          At step two of the sequential analysis, the ALJ concluded that Mr. Roscioli has the

22   following medically determinable impairments:  PTSD, bipolar disorder, seizures and lumbago.[5]

23

24   [2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 15, 20.

25   [3] "AR" refers to the certified administrative record lodged with the Court.  Dkt. No. 22.

26   [4] A claimant who engages in substantial gainful activity cannot be found disabled, no matter what
27   his medical condition, age, education, or work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).

28   [5] While acknowledging that medical records note diagnoses of schizophrenia and schizoaffective disorder, the ALJ observed that these diagnoses were made prior to the alleged onset date and that

AR 20.  However, the ALJ found that Mr. Roscioli does not have a severe impairment or combination of impairments that significantly limits his ability to perform basic work-related activities for 12 consecutive months.  *Id.* (citing 20 C.F.R. § 404.1521, *et seq.*; 20 C.F.R. § 416.921, *et seq.*).  Accordingly, the ALJ concluded that Mr. Roscioli has not been under a disability, within the meaning of the Act, from the alleged onset of July 27, 2015 through the June 18, 2018 date of the ALJ's decision.  AR 25.

The Appeals Council denied Mr. Roscioli's request for review of the ALJ's decision.  AR 1-3.  Mr. Roscioli then filed the present action seeking judicial review of the decision denying his application for benefits.  The Commissioner maintains that his decision is free of legal error and is supported by substantial evidence.

## II.    LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits.  The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995).  In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523; see also *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner.  *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

---

the evidence shows no such diagnoses since the alleged onset date.  Accordingly the ALJ found that the diagnoses of schizophrenia and schizoaffective disorder are non-medically determinable impairments.  AR 20.  Mr. Roscioli does not challenge that finding.

United States District Court
Northern District of California

III.    **DISCUSSION**

A.    **Mr. Roscioli's Mental Impairments**

As noted above, the ALJ concluded that Mr. Roscioli has medically determinable impairments, including PTSD and bipolar disorder.  Mr. Roscioli contends that, in concluding at step two of the sequential analysis that these mental impairments are not severe, the ALJ did not properly assess his functional limitations.

At step two of the five-step sequential analysis, the ALJ must assess the medical severity of a claimant's impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).  "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  A severe impairment "must be established by objective medical evidence from an acceptable medical source."  20 C.F.R. §§ 404.1521, 416.921.  The claimant bears the burden of showing that he has a medically severe impairment or combination of impairments.  *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (stating that "[t]he burden of proof is on the claimant as to steps one to four" of the sequential analysis).

An impairment or combination of impairments is considered "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work activities are abilities and aptitudes necessary to do most jobs," *Smolen*, 80 F.3d at 1290, including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting," SSR 85-28, 1985 WL 56856 at*3.  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  *Smolen*, 80 F.3d at 1290 (citing SSR 85-28); *see also Webb*, 433 F.3d at 686 (same).  If the claimant has a severe medically determinable physical or mental impairment, or a combination of impairments, that is expected to last at least 12 continuous months, he is disabled.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii).

United States District Court
Northern District of California

1    Mr. Roscioli argues that the ALJ's decision is, at best, ambiguous regarding the degree of

2    his functional limitations in the four relevant areas for mental functioning, known as the

3    "paragraph B" criteria:  (1) understanding, remembering, or applying information; (2) interacting

4    with others; (3) concentrating, persisting, or maintaining pace; and (3) adapting or managing

5    oneself.  20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  The degree of functional limitation in

6    each area can be "none," "mild," "moderate," "marked," or "extreme."  *Id.* §§ 404.1520a(c)(4),

7    416.920a(c)(4).  "[U]nless the evidence otherwise indicates that there is more than a minimal

8    limitation in [a claimant's] ability to do basic work activities," a rating of "none" or "mild"

9    generally means that a claimant's impairments are not severe.  *Id.* §§ 404.1520a(d)(1),

10   416.920a(d)(1).  Here, Mr. Roscioli says that the ALJ inconsistently found that he has both "mild"

11   and "moderate" limitations in each one of the paragraph B criteria.  For example, in assessing Mr.

12   Roscioli's ability to understand, remember or apply information, the ALJ stated:

13

14   > The first functional area is understanding, remembering, or applying
   > information.  In this area, the claimant has a *mild* limitation.  The
15   > claimant had intact memory and concentration on mental status
   > exams (Exhibits 3F/15, 21; 5F/15).  Accordingly, the undersigned
16   > finds the claimant has a *moderate* limitation in the ability to
   > understand, remember, and apply information.

17   AR 24 (emphasis added).  Similar discrepancies appear in the ALJ's assessment of the remaining

18   paragraph B criteria.  *See* AR 24-25.  Mr. Roscioli contends that, at the very least, the

19   discrepancies require a remand for clarification because they render the ALJ's findings too

20   confusing and contradictory for any proper evaluation of his decision.  Dkt. No. 23 at 5; Dkt. No.

21   26 at 4.  The Commissioner contends that the discrepancies are mere clerical errors, pointing out

22   that the Appeals Council concluded that "[t]he context of the decision, including the finding of no

23   severe mental impairment, clearly shows that the [ALJ] intended to find mild limitations."  AR 1.

24   For the first time in his reply brief, Mr. Roscioli asserts that "the Appeals Council erred in

25   attempting to guess what the ALJ meant rather than remanding the matter for the ALJ to make a

26   clear finding."  Dkt. No. 26 at 3.  Although the Commissioner argues that Mr. Roscioli's argument

27   is belated and should not be entertained, the Court agrees that the Appeals Council's assessment is

28   a reasonable one.  Mr. Roscioli's passing assertion in his reply brief does nothing to dispel the

1   reasonableness of the Appeals Council's interpretation of the ALJ's assessment of his mental

2   functioning.  In any event, for the reasons discussed below, the ALJ's conclusion of only mild

3   limitations is supported by substantial evidence.

4          The gravamen of Mr. Roscioli's argument, as stated in both his opening and reply papers,

5   is that substantial evidence demonstrates that he has severe mental impairments, such that a

6   remand is required to allow the ALJ to properly assess the paragraph B criteria and determine

7   whether the record shows his mental impairments are severe.  Dkt. No. 23 at 5; Dkt. No. 26 at 4.

8   Here, Mr. Roscioli points out that he received inpatient psychiatric treatment for over a year

9   between November 2013 and March 2015.  In particular, Mr. Roscioli notes that in a December 6,

10  2013 treatment record, Dr. Erica Mitchell, M.D. observed that he has a history of multiple

11  psychiatric hospitalizations and prior suicide attempts.  AR 785.  Additionally, Mr. Roscioli points

12  out that following his March 17, 2015 discharge from inpatient treatment, he was hospitalized on

13  April 4, 2015 after again becoming suicidal.  AR 401-408.  In a further treatment note dated May

14  22, 2015, Dr. Heidemarie Ernst, M.D. noted Mr. Roscioli's reports of childhood abuse by his

15  mother, and of intermittent visions of "spirits" that would try to strangle him at night.  AR 478.

16  Mr. Roscioli also points out that in August 2015, Dr. Ernst noted diagnoses of schizoaffective

17  disorder and PTSD.  AR 482, 484.

18         The ALJ's decision indicates that he took Mr. Roscioli's psychiatric history and treatment

19  into account, noting testimony by testifying medical expert Dr. Nathan Strahl, M.D., Ph.D. that

20  Mr. Roscioli's more serious deficits are evidenced in the period between 2012 and 2015.  AR 22;

21  41.  The ALJ acknowledged that Mr. Roscioli "had a difficult time from 2012-2015.  The evidence

22  shows that the claimant was diagnosed by various physicians with the following mental disorders:

23  schizophrenia, schizoaffective disorder, bipolar disorder, depressive disorder, psychotic disorder,

24  and PTSD."  AR 22.  In assessing Mr. Roscioli's records in the months preceding the July 27,

25  2015 alleged onset date, the ALJ also considered Mr. Roscioli's April 4, 2015 hospitalization

26  secondary to suicidal ideation, finding evidence supporting a "diagnosis of PTSD since the alleged

27  onset date with episode of regression in April 2015 when he left a secured setting, went into a

28  halfway house, and was in an independent living [situation].  He had a difficult time getting

United States District Court
Northern District of California

depressed and it lasted for little more than a month." *Id.* The ALJ also considered Dr. Ernst's

May 22, 2015 progress report, noting that she observed Mr. Roscioli's relaxed posture, neat

grooming, euthymic mood, full affect, and grossly intact memory and attention. AR 22, 481.

While the ALJ also observed that Dr. Ernst noted delusional thought content, the ALJ correctly

stated that there was no evidence that Mr. Roscioli responded to internal stimuli. AR 22, 481.

Indeed, in that report Dr. Ernst remarked that Mr. Roscioli appeared to be "quite stable at this

time." AR 478. Additionally, the ALJ considered a June 11, 2015 progress note, correctly stating

that the report revealed a "grossly intact mental status exam," except for Mr. Roscioli's reported

presence of "spirits at night that could suffocate him." AR 22, 490.

As for evidence post-dating the July 27, 2015 alleged onset date, the ALJ noted that Mr.

Roscioli's "mental status exams were generally normal except for limited insight and judgment."

AR 22 (citing AR 484, 521). While the ALJ found that the evidence supports a diagnosis of

PTSD following Mr. Roscioli's April 2015 episode of regression, he nonetheless found:

> There is no strong evidence to support a severe impairment other
> than mention of mood shifts and history of PTSD. The evidence
> does not support psychotic disorder other than mention of
> seeing shadows. Starting July 2015, the evidence does not support any
> severe impairment. He has done well since he left the halfway
> house in April 2015 and denies mood shifts, [is] compliant with
> medication management, and reported in 7F in April 2016 that he
> was recommended to start looking for work.

AR 22. These findings are supported by substantial evidence.

In an August 13, 2015 progress note, Dr. Ernst stated that since Mr. Roscioli was last seen

in the clinic, he had moved into an independent living program. AR 483. He reported seeing

shadows in his room, and Dr. Ernst noted delusional thought content and visual hallucinations. *Id.*

However, she observed that Mr. Roscioli had a relaxed posture, neat grooming, euthymic mood,

full affect, coherent thought process, and grossly intact cognition, with limited insight and

judgment. AR 484. For example, the report notes that Mr. Roscioli spent most of his time playing

video games or with his girlfriend; and when asked where he wanted to be in his life by age 30, he

said that he preferred "to live day by day" and said he was not interested in volunteer work. AR

483. During a subsequent October 8, 2015 follow-up session, Dr. Ernst again noted delusional

1    thought content and visual hallucinations, stating that Mr. Roscioli could leave his lights on at

2    night if he was afraid of seeing shadows in his room.  AR 520.  She also observed relaxed posture,

3    neat grooming, euthymic mood, full affect, coherent thought process, and grossly intact cognition,

4    with limited insight and judgment.  AR 521.  The report further notes that Mr. Roscioli continued

5    to be quite inactive during the day and was not interested in participating in activities at a church

6    within walking distance from his home.  AR 520.  He stated that he had applied for a dishwashing

7    job a hotel, but never heard back and did not want to call to follow up on the status of his

8    application.  *Id*.

9            In a follow-up appointment on January 14, 2016, Dr. Ernst remarked that Mr. Roscioli was

10   still not active during the day, but was "doing quite well," and that he reported "feeling good," was

11   eating and sleeping well, and currently had "no complaints."  AR 712.

12           In a further session on April 14, 2016, Dr. Ernst noted that Mr. Roscioli generally played

13   video games until 1:00 a.m. and then slept until 11 a.m. or 12 p.m.  AR 710.  When asked whether

14   "he might be ready to be more independent and to get a job," Dr. Ernst noted that Mr. Roscioli

15   said that he had been fired from prior jobs because he has a temper and that he had "decided that

16   he can only work alone and, therefore, needs his own business."  *Id*.  The report states that Dr.

17   Ernst discussed that "even as a 'boss,' [Mr. Roscioli] would need to learn to get along with

18   others."  *Id*.  Dr. Ernst further noted that Mr. Roscioli had been referred to a work-ready program

19   and that he was "strongly encouraged . . . to 'give it a try.'"  *Id*.; *see also* AR 22.

20           Additionally, the ALJ relied on the testimony of Dr. Strahl, a specialist in psychiatry and

21   neurology, who found "no indication of any deficits that keep [Mr. Roscioli] from being able

22   work" and opined that Mr. Roscioli has only mild impairments in each of the paragraph B criteria.

23   AR 23, 45.  In giving great weight to Dr. Strahl's opinion, the ALJ noted that the opinion was

24   "well-supported by the objective medical evidence showing generally unremarkable mental status

25   exams, limited treatment, and no evidence of decompensation since the alleged onset date."  AR

26   23, 408-409, 481, 484, 490, 521.  The ALJ also considered the February 2016 and June 2016

27   opinions of state agency psychological consultants, Dr. Kim Morris, M.D. and T. Unger, M.D.

28   Drs. Morris and Unger opined that Mr. Roscioli is not disabled, though they each found that he

United States District Court
Northern District of California

8

had moderate limitations in some areas of mental functioning.  In giving their opinions little weight, the ALJ explained that they did not consider subsequent evidence that Mr. Roscioli had engaged in substantial gainful activity.  AR 23, 57-86.  Mr. Roscioli does not dispute the ALJ's evaluation of the opinion evidence, and for the reasons discussed above, the Court finds that the ALJ's assessment is supported by substantial evidence.

In evaluating the severity of Mr. Roscioli's impairments, the ALJ acknowledged that Mr. Roscioli was given Global Assessment Functioning ("GAF") scores ranging between 41 and 50, which describe serious symptoms or impairment in social, occupational, or school functioning, *see Garrison v. Colvin*, 759 F.3d 995, 1003 n.4 (9th Cir. 2014).  However, noting that "the DSM-V dropped the use of the GAF score," the ALJ gave Mr. Roscioli's scores little weight, explaining that "a GAF score is merely a snapshot of an individual's level of functioning at a particular point in time and therefore should not be solely relied upon to determine the overall severity of the individual's mental impairments."  AR 24.  Mr. Roscioli does not challenge that finding.  An ALJ need not accept or reject GAF scores, as such scores "'do[ ] not have a direct correlation to the severity requirements in [Social Security] mental disorder listing."  *Dixon v. Saul*, 411 F. Supp. 3d 837, 853 (N.D. Cal. 2019) (quoting 65 Fed. Reg. 50746-01, 50765 (Aug. 21, 2000)).  Rather, GAF scores are "'a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment.'"  *Id*. (quoting *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998)).  Moreover, in view of Mr. Roscioli's treatment records, discussed above, which generally indicate stabilization and improvement in his symptoms such that he was referred to a work-ready program, the ALJ's decision to assign little weight to his GAF scores is supported by substantial evidence.

The Court finds no error in the ALJ's assessment of Mr. Roscioli's medically determinable mental impairments.

### B.      Mr. Roscioli's Testimony

Mr. Roscioli argues that the ALJ erred in concluding that his statements about the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the record evidence.  AR 21-22.  In evaluating a claimant's testimony regarding subjective symptoms,

1   an ALJ must engage in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th

2   Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical

3   evidence of an underlying impairment which could reasonably be expected to produce the pain or

4   other symptoms alleged."  *Id.* at 1036 (internal citations and quotation marks omitted).  The

5   claimant is not required to show that his impairment "could reasonably be expected to cause the

6   severity of the symptom [he] has alleged; [he] need only show that it could reasonably have

7   caused some degree of the symptom."  *Id.* (internal quotation omitted).  "[O]nce the claimant

8   produces objective medical evidence of an underlying impairment, an adjudicator may not reject a

9   claimant's subjective complaints based solely on a lack of objective medical evidence to fully

10  corroborate the alleged severity . . . ."  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)

11  (internal citation omitted).  "Factors that an ALJ may consider in weighing a claimant's credibility

12  include reputation for truthfulness, inconsistencies in testimony or between testimony and

13  conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or

14  follow a prescribed course of treatment."  *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007).

15  "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it

16  is a factor that the ALJ can consider in his credibility analysis."  *Burch v. Barnhart*, 400 F.3d 676,

17  681 (9th Cir. 2005).

18      Unless an ALJ finds that the claimant is malingering, when an ALJ determines that a

19  claimant has provided objective medical evidence of an underlying impairment which might

20  reasonably produce the pain or other symptoms alleged, "the ALJ may reject the claimant's

21  testimony about the severity of those symptoms only by providing specific, clear, and convincing

22  reasons for doing so."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); *see also*

23  *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014).  As recently reiterated

24  by the Ninth Circuit, "[t]his requires the ALJ to 'specifically identify the testimony [from a

25  claimant] she or he finds not to be credible and . . . explain what evidence undermines that

26  testimony.'"  *Lambert v. Saul*, — F.3d —, 2020 WL 6735633, at *9 (9th Cir. Nov. 17, 2020)

27  (quoting *Treichler*, 775 F.3d at1102).

28      Here, the ALJ found that Mr. Roscioli's "medically determinable impairments could

United States District Court
Northern District of California

United States District Court
Northern District of California

1    reasonably be expected to produce the alleged symptoms" (AR 21), and the ALJ made no finding

2    of malingering.  The ALJ therefore was required to provide specific, clear and convincing reasons

3    for rejecting Mr. Roscioli's statements regarding his symptoms.  The Court concludes that the ALJ

4    met this standard.

5            At the administrative hearing, Mr. Roscioli said that around 2013, when he stopped

6    working, he "felt like everything was starting to fall," stating that he was "mentally scarred" from

7    abuse and manipulation by his family.  AR 49-50, 51-52.  When asked what changed for him in

8    2015 that he felt he was able to work again, Mr. Roscioli stated that he "needed to talk" and

9    "needed people who wanted to talk, not to just ease [his] conscious [sic]."  AR 50.  In a September

10   2015 function report, Mr. Roscioli stated that he lives in a boarding home and does not do his own

11   cooking, but does laundry, which takes him about an hour to complete.  He identified no issues

12   with his personal care, and stated that he often spends time on activities, such as "watching

13   movies, playing video games, talking to [his] girlfriend/hanging out, chess" and walking around

14   the block with others.  AR 336.  He noted that he frequently goes outside, and either walks or uses

15   public transportation, and does not need anyone to accompany him.  He stated that his conditions

16   affect his memory and his ability to concentrate, understand and follow instructions, and said that

17   he "hardly pay[s] attention," but does finish what he starts, and is "not sure" how well he follows

18   written or verbal instructions.  AR 337.  He claimed that he does not get along well with authority

19   figures, noting that he was fired from a job at Goodwill[6] due to "a problem with another co-

20   worker."  AR 338.  Mr. Roscioli identified no unusual behaviors or fears, although he stated that

21   in 2011 he jumped off a pier into the sand.  AR 332; *see also* AR 52.  Mr. Roscioli further claimed

22   that he only sometimes handles stress well, but handles changes in routine "pretty well."  AR 338.

23           In determining that Mr. Roscioli's statements about the intensity, persistence, and limiting

24   effects of his symptoms are inconsistent with the record evidence, the ALJ gave several reasons,

25   two of which are conclusory and unsupported by substantial evidence.  The ALJ stated that Mr.

26

27   ───────────────

28   [6] The record indicates that before he stopped working in 2013, Mr. Roscioli last worked for
     Goodwill, and was again hired by Goodwill in December 2017 where he remained employed at
     the time of the March 2018 administrative hearing.  AR 39, 49.

                                                    11

Roscioli "has not generally received the type of medical treatment one would expect for a totally disabled individual." AR 22. However, the ALJ did not explain how or why he reached that conclusion, and his statement is especially vague in the context of this particular case, where records indicate that Mr. Roscioli has lived a transient lifestyle and received inpatient psychiatric treatment for over a year. *See, e.g., Lambert*, 2020 WL 6735633, at *3, *10 (rejecting the "high-level reason" that the plaintiff had "not generally received the type of medical treatment one would expect for a totally disabled individual," where the ALJ provided a summary of medical evidence, but failed to identify what testimony he found not credible and did not state which evidence contradicted that testimony). The ALJ also noted that "playing video games requires the ability to be responsive to instructions to navigate through the complexities of each level in order to achieve a specific goal and win the game." *Id*. This reason also fails to satisfy the standard for properly rejecting Mr. Roscioli's testimony and statements. "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn*, 495 F.3d at 639 (quoting *Burch*, 400 F.3d at 681). In the present matter, there is no evidence regarding Mr. Roscioli's skill level, or how much time he actually spends playing video games each day. Thus, it is not evident that the fact that Mr. Roscioli plays video games, by itself, contradicts his testimony or that any skills that may be involved are transferable to a work setting.

Nevertheless, the ALJ gave several other reasons that are supported by substantial evidence, and he explained the inconsistencies in the record that he concluded discredits Mr. Roscioli's allegations and testimony regarding the severity and limiting effects of his symptoms. While the ALJ acknowledged Mr. Roscioli's struggles with suicidal ideation and other psychiatric difficulties, he noted progress reports generally indicating stabilization and improvement in his symptoms such that he had been referred to a work-ready program by April 2016. AR 22 (citing AR 481, 484, 490, 520, 521, 710). While the ALJ also noted that Mr. Roscioli endorsed audio or visual hallucinations, the ALJ correctly noted that no treating or examining physician observed that Mr. Roscioli appeared to respond to internal stimuli of any kind. AR 22.

Apart from the objective medical evidence, the ALJ also noted that Mr. Roscioli worked at

Walmart from April 2017 to October 2017. *Id.* Mr. Roscioli seems to contend that this was error because substantial evidence "supports [his] testimony [that] he was fired on more than one occasion due to difficulty getting along with others and following instructions." Dkt. No. 23 at 7; Dkt. No. 26 at 5. The only particular evidence Mr. Roscioli highlights, however, is his testimony at the administrative hearing concerning the termination of his employment at Walmart, which he says demonstrates that "[h]e was fired from at least one job due to a conflict with a coworker." Dkt. Nos. 23 at 7 (citing AR 50-52); Dkt. No. 26 at 5 (citing AR 50-52). Although the ALJ apparently did not expressly consider or reject that portion of Mr. Roscioli's testimony, Mr. Roscioli's characterization of that testimony is not accurate. At the hearing, Mr. Roscioli initially testified that he quit his job at Walmart because he wanted to leave California. AR 38. Later in the hearing, Mr. Roscioli stated that he was fired after an incident with a co-worker. AR 50-51. However, Mr. Roscioli further testified that he returned to Walmart shortly afterward and discussed that he felt that "[he] shouldn't have been the one that got fired" and that he "was dealing with a situation . . . the right way" through human resources personnel. AR 51. According to Mr. Roscioli, Walmart immediately offered to reinstate his employment, if he so chose, but Mr. Roscioli declined. *Id.* Thus, Mr. Roscioli has not persuasively demonstrated that there was any error here, as the cited testimony appears to be entirely consistent with the ALJ's finding that Mr. Roscioli was doing well and could work, despite his mental impairments. To the extent there was any error, Mr. Roscioli has not demonstrated that this testimony, even if fully credited, would have led to a different result with respect to the ultimate determination that he is not disabled. *See Stout v. Comm'r, Social Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006).

Viewing the record as a whole, the Court finds that the ALJ provided sufficient specific, clear and convincing reasons for rejecting Mr. Roscioli's testimony.

## C.     Ms. Cardenas' Statements

In a September 2015 function report, Ms. Cardenas stated that she had known Mr. Roscioli for about a year. She noted that he cannot walk up a flight of stairs or lift heavy weights; that he can only lift about 10 pounds due to back problems; and that his conditions affect his ability to lift, squat and bend. AR 344, 349. According to her report, Mr. Roscioli can walk for approximately

13

United States District Court
Northern District of California

one mile before he needs to rest for 10-15 minutes. AR 349. Ms. Cardenas further noted that Mr. Roscioli has difficulty going to sleep and sometimes sleeps too much; that he does chores such as cleaning and laundry for several hours per week, but needs reminders; and that he spends his days taking naps, watching television and playing video games. AR 345, 346. Ms. Cardenas further stated that Mr. Roscioli goes outside daily and does not need anyone to accompany him; that he uses public transportation or walks because he "has a history of falling asleep at the wheel"; and that he regularly goes to the convenience store and for walks around the neighborhood. AR 348. Ms. Cardenas noted that Mr. Roscioli's hobbies include playing video games, watching television and movies and socializing with others, and that he engages in these activities daily or every other day, but also stated that Mr. Roscioli is often depressed and does not have the energy for these activities. AR 348. Nonetheless, Ms. Cardenas stated that for a few times each week, Mr. Roscioli engages in social activities such as eating with others and talking on the phone. AR 348. Ms. Cardenas states that Mr. Roscioli can pay bills and handle money; that he needs reminders for medical and dental appointments; that he can pay attention for "an hour/few hours"; and that he does not follow verbal instructions well, but is "good" at following written instructions. AR 349. She further stated that Mr. Roscioli does not speak with his mother often "because of personal issues"; that he gets along "fairly well" with authority figures, but was fired from a job at Goodwill for not getting along with a co-worker. AR 349, 350. While Ms. Cardenas noted that Mr. Roscioli does not handle changes in routine well, she said he handles stress "fairly well." AR 350. She also noted that a side effect of his medication is weight gain. AR 351.

Mr. Roscioli contends that the ALJ failed to give sufficient reasons for rejecting Ms. Cardenas's statements regarding his functional abilities. "Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012), *superseded by regulation on other grounds as stated in Sisk v. Saul*, 820 F. Appx. 604, 606 (9th Cir. 2020). "When an ALJ discounts the testimony of lay witnesses, 'he [or she] must give reasons that are germane to each witness.'" *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993)).

1    Here, the ALJ rejected Ms. Cardenas's statement as follows:

2
3            Ms. Cardenas stated the claimant cannot walk up the stair[s] and
             cannot lift heavy weight.  While a layperson can offer an opinion on
4            the severity of the claimant's symptoms in relation to the claimant's
             ability to work, the opinion of that person is far less persuasive on
5            the same issues than are the opinions of medical professionals as
             relied on herein.  The evidence shows no severe physical
6            impairment that limits his ability to work, as discussed above.  Thus,
             the undersigned gives Ms. Cardenas's statements little weight.

7    AR 24.

8            As noted above, the ALJ found that Mr. Roscioli has the following non-severe medically

9    determinable physical impairments:  seizures and lumbago.  AR 20.  Mr. Roscioli contends that

10   the ALJ did not provide germane reasons for rejecting Ms. Cardenas's statements regarding the

11   limiting effects of his physical impairments, arguing that "the record does show extensive physical

12   therapy treatment for [Mr. Roscioli]'s back pain, and there are x-rays and MRI scans of [his]

13   lumbar spine showing abnormalities consistent with the witness testimony."  Dkt. No. 23 at 8;

14   Dkt. No. 26 at 6.  "Inconsistency with medical evidence," however, is a germane reason for

15   discrediting the testimony of lay witnesses.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir.

16   2005).  Here, the ALJ considered all of Mr. Roscioli's physical therapy records and imaging

17   studies and correctly noted that they reveal no acute fracture and minimal pathological findings.

18   The ALJ acknowledged that Mr. Roscioli "received physical therapy from June 2015 to March

19   2016," and noted that records showed he "generally had full range of motion of the lumbar spine

20   without tenderness."  AR 21, 524-700.  While those records generally note reduced range of

21   motion, they show that Mr. Roscioli's lumbar active range of motion was found to be within

22   functional limits.  *See, e.g.,* AR 527, 539, 562, 585, 608, 631, 654, 677, 699.  The ALJ also

23   considered Mr. Roscioli's x-ray and MRI records, noting that they reveal mild or minimal

24   findings.  A June 2, 2015 x-ray notes "mild anterior wedging of the L1 vertebral body with less

25   than 25% height loss" and "[n]ormal alignment of the sacrum and coccyx."  AR 466-467.  A July 6,

26   2015 MRI of the lumbar spine revealed "[m]ild anterior wedging of the L1 vertebrae resulting in

27   less than 25% height loss.  No significant marrow edema identified.  No significant disc

28   herniation, central canal or foraminal stenosis."  AR 468.  While the ALJ acknowledged that

United States District Court
Northern District of California

15

1    records indicated "slight perilumbar tenderness," Mr. Roscioli's straight leg raising exams were

2    negative.  AR 21, 442, 446.  Additionally, the ALJ noted that treatment records after 2015 indicate

3    no significant back complaints and that Mr. Roscioli's back pain was stable.  AR 21, 725, 728-

4    729.  As for Mr. Roscioli's seizures, the ALJ correctly observed that the record shows no

5    emergency room visits or hospitalizations, and Mr. Roscioli stated that he rarely has seizures,

6    noting that his last one was in 2009.  AR 21, 324-326.

7         With respect to the opinion evidence, the ALJ gave little weight to the opinions of the state

8    agency consultants, Drs. Wong and Jackson, insofar as their opinions were based on Mr.

9    Roscioli's shoulder pain that records indicate did not meet the durational requirement (AR 23,

10   723, 726, 728) or were inconsistent with Mr. Roscioli's records regarding his back pain as

11   discussed above (AR 23, 442, 446, 466-468, 524-700).[7]  Nevertheless, both doctors opined that

12   Mr. Roscioli's physical impairments do not prevent him from working.  AR 23, 66-67. 71, 81-82,

13   86, 99-101, 105, 117-119, 123.

14        Mr. Roscioli argues that Ms. Cardenas's statement supports Mr. Roscioli's allegations of

15   difficulty getting along with others in a work setting.  Ms. Cardenas, however, did not attest to any

16   limitations beyond those described by Mr. Roscioli himself.  And, in some instances, she seemed

17   to ascribe greater capabilities, including getting along "fairly well" with authority figures.  In any

18   event, the Court has concluded that the ALJ gave sufficient reasons for rejecting Mr. Roscioli's

19   testimony.  "In such a situation, the ALJ also gives germane reasons for rejecting other lay witness

20   testimony where it is found to be similar to the claimant's." *Bennet v. Colvin*, 202 F. Supp. 3d

21   1119, 1130-31 (N.D. Cal. 2016); *see also Valentine*, 574 F.3d at 694 ("In light of our conclusion

22   that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective

23   complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that

24   the ALJ also gave germane reasons for rejecting her testimony.").  The Court finds no error in the

25   ALJ's assessment of Ms. Cardenas's statements.

26

27

28

United States District Court
Northern District of California

---

[7] As noted above, Mr. Roscioli does not challenge the ALJ's assessment of the opinion evidence.

**IV.    CONCLUSION**

Based on the foregoing, the Court denies Mr. Roscioli's motion for summary judgment and grants the Commissioner's motion for summary judgment.  The Clerk shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: November 25, 2020

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge